## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**JASPER ROBINSON, ET AL.**          **CASE NO.  6:18-CV-01062**

**VERSUS**                          **JUDGE ROBERT R. SUMMERHAYS**

**GENE LIPPS, ET AL.**              **MAGISTRATE JUDGE HANNA**


### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment Under Rule 56 [ECF No. 49] filed by defendants Lafayette City-Parish Consolidated Government ("LCG") and Officer Gene Lipps, individually and in his official capacity as a police officer for LCG. Plaintiff Jasper Robinson has filed an Opposition [ECF No. 51], to which Defendants have filed a Reply. [ECF No. 53]. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.


### I.
#### BACKGROUND

This case arises from the arrest of Jasper Robinson by Officer Gene Lipps on July 15, 2017. [ECF No. 21 at 1-4] Lipps was one of several officers dispatched to the intersection of South Bienville Street and Cameron Street in Lafayette, Louisiana, due to a report of a fight "involving 30 to 40 people." [*Id.*] Robinson and his family were near the scene of the fight to attend his mother's wedding. When they heard the commotion of the fight and the police response, they moved closer to the altercation and joined a group of bystanders that had gathered around the scene of the fight. [*Id.*] Lipps ordered some of the bystanders, including Robinson, to move off the street. [*Id.*] A verbal altercation ensued between Robinson and Lipps, shortly after which Lipps arrested Robinson. [*Id.*; ECF No. 49-1 at 11-13] Robinson alleges that Lipps slammed him head-first onto

the pavement, while Lipps describes his action as a "take-down maneuver" initiated to effect the arrest when Robinson resisted. [ECF No. 11 at 4; ECF No. 49 at 13] Robinson alleges that he never posed a threat to Lipps, that he was injured by Lipps' "take-down maneuver," that he was not given medical attention while he was in custody, and that Lipps filed false charges to cover his improper behavior. [ECF No. 11 at 3-5]

After his arrest, Robinson was charged with "remaining after forbidden," disturbing the peace, and resisting an officer. At trial in the Lafayette City Court, Officer Lipps testified that on July 15th he was responding to a fight in the street and that ultimately fifteen people (including Robinson) were arrested at the scene. [ECF No. 49-6 at 14-15] Lipps testified that several groups of bystanders approached the responding officers from different directions as the officers were attempting to gain control of the area, that some of these bystanders gathered behind the responding officers, and that Robinson was in one of the groups standing behind the officers. [*Id.* at 19] Lipps testified that, to eliminate any threats from behind the responding officers, he ordered Robinson and his group to leave the area. [*Id.*] Lipps stated that Robinson then became confrontational. [*Id.* at 19] Robinson complied with Lipps' directive to move out of the roadway but, according to Lipps, he did not leave the area as directed and continued to confront the responding officers. [*Id.*] Because of Robinson's combative demeanor and refusal to leave the area, Lipps testified that he believed that Robinson might attempt to create another "hot spot" in the overall altercation that the police were trying to subdue; accordingly, he decided to arrest Robinson. [*Id.* at 19-20] Lipps further testified that when he reached for Robinson to take him into custody, Robinson attempted to pull away with his left arm, which caused Lipps to grab Robinson around the waist and to bring him down onto the ground. [*Id.* at 28-30, 39] Lipps testified that, during this "take down

2

maneuver," Robinson swung out with his right arm and that Lipps believed Robinson was attempting to strike him. [*Id*. at 30]

Robinson testified at trial that he was in the area because his mother had been married nearby earlier in the day, and that he wanted to investigate the commotion caused by the crowd and the police response. [ECF No. 49-6 at 47-49] Robinson testified that he was grabbed by two officers and never resisted arrest. [*Id.* at 49]

After the presentation of evidence, the City Court entered a directed verdict in Robinson's favor on the charges of disturbing the peace and "remaining after forbidden" but convicted him of resisting an officer. [ECF No. 49-6 at 51] The trial court ruled that:

> However, it is very clear to me that when you were arrested, you were moving, trying, jerking away, trying not to be arrested. Whether or not you made an attempt to hit the officer, that was not clear to me from the video, but it doesn't matter. You were very clearly resisting an officer…. And, that means get away as fast as you can, not after the officer tells you to go on the street, you do go on the street, curse and lunge towards the officer or actually move, not a heavy lunge, but move toward the officer. Any reasonable officer would have thought, you might be going, coming at him, and would have arrested you. Any reasonable officer would have done that.

[*Id.* at 51] The City Court also noted that "[t]hese officers were in danger and you need to understand that." [*Id.* at 52] The record does not indicate that the conviction was appealed or that there are any current proceedings related to that conviction.

Robinson filed suit in the 15th Judicial District Court for the Parish of Lafayette, and the case was removed to this Court. [ECF No. 1] Robinson later filed a First Amended and Supplemental Complaint ("Amended Complaint"). [ECF No. 11] Robinson asserts claims against Lipps for: unlawful arrest in violation of the Fourth Amendment to the United States Constitution and Louisiana law; use of excessive force in violation of the Fourth Amendment to the United States Constitution and Louisiana law; violation of his rights to due process in violation of the

3

Fourteenth Amendment to the United States Constitution and Louisiana law; filing of false cover charges under state law; malicious prosecution under state law; assault and battery under state law; failure to provide medical attention under state law; intentional and negligent infliction of emotional distress under state law; cruel treatment under state law; false arrest and imprisonment under state law; bystander damages on behalf of Robinson's minor children; and loss of consortium on behalf of his minor children. Robinson also asserts vicarious liability by LCG for all of the above claims. [ECF No. 11 at 5-7] Defendants moved to dismiss the Amended Complaint. [ECF No. 15] In its ruling on that motion, the Court dismissed Robinson's claim for unlawful arrest under the Fourth Amendment because it was barred by *Heck v. Humphrey*, dismissed his claim of false arrest and imprisonment under state law because that claim challenged the validity of his conviction, and ruled that Robinson failed to state a claim for violation of his due process rights under the Fourteenth Amendment. [ECF No. 21][1] With respect to the remaining claims, the Court ruled that the record was insufficient to address the applicability of *Heck v. Humphrey*. [*Id.*]

## II.
### SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the

---

[1] The Court also previously dismissed Joel Robideaux and Tony Aguillard, who were named as defendants in the First Amended and Supplemental Complaint. [ECF No. 38]

non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

**III.**

**LAW AND ANALYSIS**

**A.**     **Excessive Force Under the Fourth Amendment.**

Defendants argue that Robinson's excessive force claim under the Fourth Amendment is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny. [ECF No. 49-1 at 18] Specifically, Defendants argue that a finding in Robinson's favor on the question of excessive force would undermine his conviction for resisting an officer, and therefore *Heck* bars the excessive force claim. [*Id.*] Robinson argues that *Heck* is inapplicable because he is not challenging his arrest or conviction for resisting arrest and his claim that unreasonable force was used in his arrest does not necessarily undermine his conviction. [ECF No. 51 at 12]

**1.**     **The *Heck* Doctrine.**

Under *Heck*, a claim is not cognizable under § 1983 if that claim questions the validity of a criminal conviction unless the plaintiff can show that the conviction has been reversed or invalidated. *Id.*; *Lee v. Ard*, 785 F. App'x 247, 248-49 (5th Cir. 2019) (citing *Heck*, 512 U.S. 477). Concerns of finality and consistency of judgments forbid collateral attack on criminal convictions by way of § 1983. *Aucoin v. Cupil*, 958 F.3d 379, 380 (5th Cir.), *cert. denied*, 141 S. Ct. 567, 208 L. Ed. 2d 183 (2020). The question of whether *Heck* applies to bar excessive force claims is analytical and fact-intensive, and it focuses on "whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).

A review of *Heck's* progeny in the Fifth Circuit is instructive as to how to apply *Heck* in the present case. In *Hudson v. Hughes*, the plaintiff was convicted of battery of a police officer and being a felon in possession of a firearm that was found after his arrest. 98 F.3d 868, 870, 73

(5th Cir. 1996). The plaintiff's § 1983 suit alleged, *inter alia*, that the arresting officers used excessive force when conducting the arrest. *Id.* at 870. The plaintiff argued that the force he used against the officers, which formed the basis of his conviction for battery of an officer, was justified by self-defense. *Id.* at 873. The court ruled that his excessive force claim was barred under *Heck* because "the question whether the police applied reasonable force in arresting [the plaintiff] depends in part on the degree of his resistance, which in turn will place in issue whether his resistance…was justified, which, if it were, necessarily undermines" his conviction of assaulting an officer. *Id.*

In *Arnold v. Town of Slaughter*, the plaintiff was convicted of resisting arrest under Louisiana Revised Statutes § 14:108 after an altercation with officers who were arresting an unrelated motorist in front of the plaintiff's home. 100 F. App'x 321, 322-24 (5th Cir. 2004). The trial court found that the plaintiff interfered with the officers' attempt to arrest the motorist. Specifically, the court found that the plaintiff was hostile and belligerent, refused to remove himself from the area when requested, and initiated a physical confrontation with an officer after the officer attempted to stop the plaintiff from escaping. *Id.* As in the present case, the plaintiff brought a § 1983 claim for excessive force, alleging he did nothing to provoke his arrest or to resist it. *Id.* The Fifth Circuit held that the excessive force claim was barred by *Heck*. *Id.* at 324-25. Given the fact that the state trial court found that the plaintiff resisted and interfered with two different lawful arrests, the Fifth Circuit reasoned that the plaintiff was "squarely challeng[ing] the factual determination that underlies his conviction for resisting an officer" by alleging in his § 1983 complaint that he was arrested for no reason. *Id.* at 324-25.

In *Bush v. Strain*, the plaintiff was injured during an arrest, and was ultimately convicted of resisting arrest. 513 F.3d at 495. The parties agreed that after the arresting officer had partially

handcuffed the plaintiff and was attempting to complete the arrest, the plaintiff pulled her free hand away from the officer. *Id.* at 496. The parties disputed how the plaintiff was subsequently injured: the officer alleged that the plaintiff was injured unintentionally during the attempt to subdue her, and the plaintiff alleged she had been subdued and was compliant when the officer intentionally injured her. *Id.* The Fifth Circuit concluded that the convicting court found only that the plaintiff swung her arm out after the officer told her she was under arrest and while he was attempting to handcuff her. *Id.* The court made no findings regarding how long the resistance lasted or at what point the plaintiff was injured – both of which were "material, disputed facts pertinent to her excessive force claim that were not necessary to sustain Bush's resisting arrest conviction." *Id.* at 499. The Fifth Circuit held that the excessive force claim was not barred by *Heck* because the plaintiff's allegations and evidence indicated that the use of excessive force occurred *after* she had been restrained. *Id.* As a result, the excessive force allegations did not challenge the plaintiff's conviction for resisting arrest. *Id.*

In *Thomas v. Pohlman*, the plaintiff pleaded guilty to disturbing the peace and resisting an officer. 681 F. App'x 401, 403 (5th Cir. 2017). Plaintiff brought several claims against the relevant sheriff and deputies, including under § 1983 for excessive force. *Id.* The Fifth Circuit distinguished the case from *Arnold* and held that the excessive force claim was not necessarily barred by *Heck* because, like *Bush*, the plaintiff alleged that the officers used excessive force after she had been detained, not merely during the arrest. *Id.* at 407. Therefore, at least a portion of the excessive force claim was based on facts "temporally and conceptually distinct" from the plaintiff's conviction for resisting an officer and, consequently, *Heck* did not bar the plaintiff's claim. *Id.*

In sum, based on *Arnold, Bush*, and *Thomas,* "[w]here a complaint describes a single violent encounter in which the plaintiff claimed he was an innocent participant but the allegations

are inconsistent with his conviction, *Heck* applies to bar his excessive-force claims." *Ducksworth v. Rook*, 647 F. App'x 383, 386 (5th Cir. 2016) (citing *Daigre v. City of Waveland*, 549 Fed.Appx. 283, 286 (5th Cir.2013)). Therefore, if a plaintiff who was convicted of resisting arrest later brings a § 1983 claim for excessive force, that claim is barred if the challenged use of force and the arrest were "a single violent encounter" and the plaintiff alleges that he or she was an "innocent participant" in that encounter. *Id.*

## 2. The Summary Judgment Evidence.

Accordingly, whether *Heck* bars Robinson's excessive force claim turns on the facts underlying Robinson's conviction for resisting arrest. [ECF No. 21 at 9] Robinson was convicted of resisting an officer under LCG Code of Ordinances § 62-66, "Resisting an officer." [ECF No. No. 49-6 at 50-52] This ordinance provides, in pertinent part:

(a) Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

(b) (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification and connotation, mean the following:

    a. Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.

    b. Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.

    c. Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.

    d. Congregation with others on a public street and refusal to move on when ordered by the officer.

LCG Code of Ordinances § 62-66.[2]

Officer Lipps' bodycam video footage of the incident is attached as one part of Exhibit E to Defendants' Motion for Summary Judgment. This video shows that when Lipps arrived in the area where the arrest occurred, he was confronted with a chaotic scene and a street filled with officers, patrol vehicles, and civilians. It also shows Lipps instructing several groups of bystanders to clear the street, and most complied. The video goes on to show that after a brief verbal back-and-forth with Robinson, during which Robinson stepped onto the curb, Lipps turned back to the scene of the fight. Robinson can be heard continuing to speak to Lipps, as described in the Amended Complaint, and then Lipps turned around and arrested Robinson. Whether Robinson pulls away or swings at Lipps is unclear from this video. During the booking process, while Lipps was present, Robinson stated that his right leg and knee were in pain, and that he had a previous condition involving his right knee or leg. The footage does not show Robinson receiving any medical attention, however, it ends shortly after Robinson makes these statements.

Exhibit E also includes bodycam footage of Officer Robedreiak Green, another officer who was on the scene on the night of Robinson's arrest. Green's footage includes a view of Robinson's arrest from behind Lipps. While Lipps' part of the exchange cannot be understood in this video, Robinson's retorts are clearly audible. Robinson can be seen backing away when Lipps reaches for him, but Lipps ultimately grabs Robinson with Lipps' right arm around Robinson's neck or shoulder and brings the two of them down to the ground together.

Exhibit F to the Defendants' motion is a cell phone video of the arrest taken by an unidentified bystander. In this video, Robinson can be seen pulling away when Lipps grabs his left arm, and thereafter Lipps wraps his right arm around Robinson's neck or shoulder and pulls him

---

[2] The quoted portion of this statute follows the language of Louisiana Revised Statute § 14:108, "Resisting an officer."

down to the ground with him. At least one other officer assists Lipps with handcuffing Robinson. To the extent Robinson's right arm swings out, it is unclear whether that motion was an attempt to strike Lipps, regain balance, or break his fall.

After viewing these videos and hearing the testimony described above, Judge Bouillion of Lafayette City Court found Robinson guilty of resisting an officer because, when Lipps attempted to grab Robinson to effect the arrest, Robinson was "moving, trying, jerking away, trying not to be arrested." [ECF No. No. 49-6 at 51] Judge Bouillion goes on to state that "[a]ny reasonable officer" in Lipps' position, confronted with the recalcitrance of Robinson and others to leave an area that the police were attempting to control, might have thought that Robinson could be a threat to the officers in the area and arrested him in order to prevent him from presenting a danger. [*Id.* at 51-52] Judge Bouillion thus appears to have based Robinson's conviction under § 62-66 on his actions in pulling away from Lipps when the officer attempted to make an arrest by grabbing Robinson's arm. [*Id.* at 51]

In sum, while the City Court did not find Robinson guilty of either remaining after forbidden or disturbing the peace, it did find that Robinson's failure to quickly leave the scene and his verbal back-and-forth with Lipps gave Lipps reason to suspect Robinson might pose a threat and provided justification to arrest him. When Lipps reached for Robinson's arm to effect the arrest, Robinson pulled away, which, according to Judge Bouillion, supported Robinson's conviction for resisting an officer under LCG Ordinance § 62-66.

### 3.    Application.

Defendants argue that *Heck* bars Robinson's excessive force claim under the Fourth Amendment because, if successful, the claim would undermine his criminal conviction for resisting an officer; alternatively, they argue that Lipps used reasonable force to overcome

Robinson's resistance. [ECF No. 49-1 at 20-22] Robinson argues that he is not challenging his criminal conviction but challenges only the unreasonable force Lipps allegedly used to effect the arrest. [*Id.* at 12-13] The Court concludes that Robinson's excessive force claim is barred by *Heck*.

While the Amended Complaint does not specifically allege that Robinson was arrested "for no reason," it does allege that Robinson was arrested without probable cause [*Id.* at 6] and that "[a]t the time of this violent attack Mr. Robinson did not pose a threat to Officer Lipps." [*Id.* at 4] While Robinson argues in his opposition that he is only challenging the amount of force used to effect his arrest, the allegations in the Amended Complaint show that Robinson's theory of the case is that he did nothing to provoke Lipps' actions, and that he was "an innocent participant." *Ducksworth*, 647 F. App'x at 386. These allegations would "place in issue whether [Robinson's] resistance…was justified, which, if it were, necessarily undermines" his conviction for resisting an officer. *Hudson*, 98 F.3d at 873.

Moreover, the use of force challenged by Robinson was not temporally and conceptually distinct from his arrest. The City Court found that Robinson resisted an officer by pulling away from Lipps' grasp. Robinson alleges that Lipps used force to make the arrest but does not allege that Lipps used any force after Robinson had been subdued. The summary judgment record – and, in particular, the bodycam footage – shows that Lipps' use of force and Robinson's efforts to resist arrest were contemporaneous. The trial court also expressly found that when Robinson was arrested, he was "moving, trying, jerking away, trying not to be arrested." Accordingly, unlike the claims at issue in *Bush* and *Thomas*, Robinson's excessive force claim, if successful, would call his conviction for resisting an officer into question. Because there is no showing that the conviction has been overturned or otherwise invalidated, Robinson's claim is barred by *Heck*.

Consequently, Defendants' motion is GRANTED as to Robinson's claim of excessive force under the Fourth Amendment, and that claim is DISMISSED WITH PREJUDICE until the *Heck* conditions are met.

Defendants alternatively seek dismissal of Robinson's Fourth Amendment excessive force claim on the grounds that Lipps is entitled to qualified immunity. [ECF No. 49-1 at 26] In light of the dismissal of Robinson's Fourth Amendment excessive force claim, Defendants' motion for dismissal on the grounds of qualified immunity is DENIED AS MOOT.

**B.**  **First Amendment Retaliatory Arrest.**

Defendants also seek dismissal of Robinson's claim of retaliatory arrest in violation of the First Amendment because this claim requires proof of the absence of probable cause, and that Lipps had probable cause to arrest Robinson. [ECF No. 49-1 at 23] Robinson argues that his verbal exchange with Lipps precipitated the events that led to his arrest. [ECF No. 51 at 14][3]

The First Amendment to the United States Constitution generally "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019)(citing *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L.Ed.2d 441 (2006))(internal quotations omitted). A First Amendment claim is the appropriate manner by which to seek relief for such a retaliatory action. *Id.* A plaintiff asserting such a claim must show (1) that he was injured by the official's action, (2) that the official had a retaliatory motive, and (3) that the retaliatory motive was a "but-for" cause of the injury – in other words, the action against the plaintiff would not have been taken absent the

---

[3] While neither the Original nor Amended Complaint explicitly asserts a claim for retaliatory arrest in violation of the First Amendment, Defendants argue that claim should be dismissed, and Robinson objects that it should survive. As the parties agree that Robinson intended to assert a claim of retaliatory arrest, the Court will address Defendants' motion thereon.

motive. *Id.* When claiming a retaliatory arrest in violation of the First Amendment, a plaintiff must show that the arresting officer lacked probable cause for the arrest and, absent such a showing, the claim fails. *Id.* at 1725. Even if probable cause is absent, the plaintiff must show that retaliation was a substantial or motivating factor behind the arrest. *Id.*

Here, Robinson's retaliation claim – like his excessive force claim – runs "afoul of *Heck*'s policy of finality" because to succeed on his claim Robinson would have to show that Lipps lacked probable cause to arrest him, which would in turn call his City Court conviction for resisting an officer into question. *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 F. App'x 578, 583 (5th Cir. 2012)(citing *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995)). Specifically, the City Court found that Robinson resisted an officer by pulling away from Lipps and that any reasonable officer in Lipps' position would have been justified in arresting Robinson on other grounds as well. A finding that Lipps lacked probable cause would contradict the factual basis for Robinson's conviction, which is a collateral attack on a conviction barred by *Heck*. The Defendants' motion is therefore GRANTED as to Robinson's claim for retaliatory arrest under the First Amendment, which is DISMISSED WITH PREJUDICE until such time as the *Heck* conditions are met.

## C.    Robinson's State Law Claims.

Defendants argue that certain of Robinson's state law claims are precluded by *Heck* because they arise out of the same nucleus of operative facts as the federal claims and "do not differ or predominate over the federal claims in either proof requirements of remedies." [ECF No. 49-1 at 26-27] Robinson argues that, because *Heck* does not bar his federal law claims, *Heck* also does not bar his state law claims. [ECF No. 51 at 18]

1.     **Excessive Force.**

Defendants seek dismissal of Robinson's state law excessive force claim under *Heck* and,

alternatively, on the grounds that Lipps' use of force was not excessive based on the factors set

forth in *Kyle v. City of New Orleans*, 353 So. 2d 969, 970 (La. 1977). [ECF No. 49-1 at 28-29]

Robinson argues that there is a genuine issue of material fact as to the reasonableness of the force

Lipps used in the arrest based on the *Kyle* factors. [ECF No. 51 at 17-19]

A Louisiana state law excessive force claim is sufficiently similar to its federal counterpart

that a decision on a state law excessive force claim will mirror a decision on a § 1983 excessive

force claim. *Shepherd on behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 286

(5th Cir. 2019)(citing *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009)). As such, *Heck*'s

rationale disallowing collateral attacks on criminal convictions applies equally to state law

excessive force claims. *Williams v. Town of Delhi*, No. CIV.A. 14-00043, 2015 WL 868746, at *9

(W.D. La. Feb. 27, 2015) (citing *Williams v. Harding*, 2012–1595 (La. App. 1 Cir. 4/26/13), 117

So. 3d 187, 191 (collecting cases)); *see also Price v. City of Bossier*, No. 20-30263, 2021 WL

48423, at *3 n.4 (5th Cir. Jan. 5, 2021) (citing *Williams v. Harding* and making an *Erie* guess that

state law intentional tort claims amounting to collateral attacks on criminal convictions are barred

by *Heck*). Here, Robinson's state law excessive force claim is based on the same facts as his federal

claim under § 1983. Because Robinson has not shown that his conviction has been disturbed, *Heck*

likewise bars his state law excessive force claim. Defendants' motion is GRANTED as to that

claim, which is DISMISSED WITH PREJUDICE until such time as the *Heck* conditions are met.

2.     **Assault, Battery, and Intentional Infliction of Emotional Distress.**

Defendants argue that Robinson's state law claims for assault and battery should be

dismissed because they cannot succeed without a showing that Lipps acted with unreasonable or

excessive force, a finding that would call his conviction for resisting an officer into question. [ECF No. 49-1 at 29-30] They argue that his claim for intentional infliction of emotional distress should be dismissed because Lipps' actions were not extreme and outrageous. [ECF No. 49-1 at 31] Robinson contends that his assault and battery claims survive because Lipps acted with unreasonable or excessive force. [ECF No. 51 at 19-20] He argues that his intentional infliction of emotional distress claim is viable because Lipps acted in an extreme and outrageous manner. [ECF No. 51 at 20-21]

As noted above, *Heck* bars a Fourth Amendment excessive force claim arising from an arrest if the factual basis of the claim is not temporally and conceptually distinct from the factual basis of an undisturbed criminal conviction. State law intentional tort claims that stem from the arrest – including assault, abuse of process, intentional infliction of emotional distress, false arrest, false imprisonment, negligence, and gross negligence – are also barred by the *Heck* rationale precluding collateral attack of a criminal conviction through a civil proceeding. *Price v. City of Bossier*, 2021 WL at *3. The allegations underlying Robinson's intentional tort claims are not temporally and conceptually distinct from his arrest. Consequently, Defendants' motion is GRANTED regarding Robinson's claims of assault and battery, and those claims are DISMISSED WITH PREJUDICE until such time as the *Heck* conditions are met.

### 3.    Negligent Infliction of Emotional Distress.

Defendants seek dismissal of Robinson's claim for negligent infliction of emotional distress on the grounds that the force used in the arrest was reasonable, and therefore cannot constitute extreme or outrageous behavior. [ECF No. 49-1 at 31-32] Robinson argues that Lipps' conduct was extreme and outrageous and resulted from abuse of Lipps' authority over Robinson. [ECF No. 51 at 20-21]

Claims of negligent or intentional infliction of emotional distress that are based on the same factual underpinnings as a *Heck*-barred claim of excessive force are also precluded. *Wallace v. City of Slidell*, No. CV 15-383, 2016 WL 1223065, at *4 (E.D. La. Mar. 29, 2016), *aff'd sub nom. Wallace v. Slidell City*, 671 F. App'x 354 (5th Cir. 2016)(citing *Hainze v. Richards*, 207 F.3d 795, 798-9 (5th Cir. 2000)). Robinson alleges that his emotional distress resulted from Lipps lunging at him, which caused "the distress of being subject to police brutality and possible outcomes of such brutality," and the injuries suffered from the manner in which Lipps subdued Robinson. [ECF No. 51 at 21] The factual allegations that support Robinson's claim for negligent infliction of emotional distress, therefore, are not temporally and conceptually distinct from those supporting his conviction for resisting an officer, which remains undisturbed. Consequently, *Heck* bars Robinson's negligent infliction of emotional distress claim. Accordingly, Defendants' motion is GRANTED as to the claim of negligent infliction of emotional distress, which is DISMISSED WITH PREJUDICE until the *Heck* conditions are met.

### 4. Failure to Provide Medical Care.

Robinson brings a state tort claim of failure to provide medical attention. [ECF No. 11 at 6] Defendants argue that this claim must be dismissed because the injury Robinson presented at the emergency room after his release "was not so severe or life threatening, at the time of his arrest, that Lipps was required to bring Plaintiff to a hospital." [ECF No. 49-1 at 35] Defendants argue that the medical records of Robinson's treatment from shortly after the arrest show that Robinson suffered only "a small abrasion to the lateral aspect of his right knee, and … minimal effusion (swelling)." [ECF No. 49-1 at 33] Robinson contends that Lipps had a duty to render aid not only because Lipps caused Robinson's injuries but also because Lipps was the arresting officer. [ECF

No. 51 at 21-22] Robinson contends that he suffered injuries to his knee, elbow, and shoulder. [ECF No. 51 at 16]

Robinson's claim of failure to provide medical care is based on Lipps' actions from the time of the arrest through the time Robinson was released, and therefore is temporally and conceptually distinct from his arrest. Accordingly, this claim is not barred by *Heck*. Louisiana Civil Code article 2315 obligates a person who by their fault causes damage to another to repair that damage. La. Civ. Code Ann. art. 2315(A). Such liability is determined by the duty-risk analysis, which requires that a plaintiff show:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Audler v. CBC Innovis, Inc*., 519 F.3d 239, 249 (5th Cir. 2008)(quoting *Lemann v. Essen Lane Daiquiris, Inc*., 923 So.2d 627, 633 (La. 2006)).

A police officer has a duty to protect a detainee from harm by taking actions that are reasonable under the circumstances. *Griffis v. Travelers Ins. Co*., 273 So. 2d 523, 526 (La. 1973). This duty only arises "if and when [the detainee's] mental and/or physical condition discloses the need of such services." *Evans v. Hawley*, 559 So. 2d 500, 505 (La. Ct. App.), *writ denied*, 563 So. 2d 1156 (La. 1990)(quoting *Cobb v. Jeansonne*, 50 So.2d 100 (La.App.2d Cir.1951)). In *Evans*, the court held that the defendants did not violate their duty to provide care to a plaintiff who died after leaving detention because a medical evaluation during detention found no urgent problems, the plaintiff acted consistently with alcohol intoxication, and the officers consistently monitored the plaintiff while he was in their custody. *Evans*, 559 So. 2d at 505. Although the plaintiff was unsteady at the time he was to be released, "his condition was not such that the officers should

have been alerted to seek further medical attention," and it was reasonable for him to be released to the bondsman acting on behalf of the family. *Id.* Officers have not been held liable for failing to provide medical treatment if a detainee does not request medical treatment or complain of symptoms. *Id.* (citing *Elsey v. Sheriff of Parish of East Baton Rouge*, 435 So.2d 1104 (La.App. 1st Cir.1983), *writ denied* 440 So.2d 762 (La.1983) and *Burns v. Town of Leesville*, 383 So.2d 109 (La.App. 3d Cir.1980)). Whether an officer violates the duty to provide medical care, therefore, depends on the condition of the detainee while in custody and whether assistance is requested.

Here, Defendants argue that Lipps did not violate his duty to provide medical care to a person in his charge because the injury the parties agree was inflicted was not "so severe or life threatening" that it required hospitalization. The caselaw, however, does not appear to limit this cause of action to "severe" or "life threatening" injuries. Rather, the cause of action is grounded on whether the detainee's "mental and/or physical condition discloses the need of such services." *Evans*, 559 So. 2d at 505. Medical records submitted by Defendants show that Robinson was evaluated on July 16, 2017, the day after the arrest. [ECF No. 51-7 at 9] Robinson told the medical provider that he was experiencing pain and decreased range of motion in his right elbow, side, and leg. [*Id.* at 13, 16] Robinson was diagnosed with right knee effusion (i.e., swelling of the joint), right elbow pain, abrasion, and musculoskeletal pain. [*Id.* at 18-21] Robinson alleges that he requested medical attention while in custody and did not receive it. [ECF No. 11 at 5] Viewed in the light most favorable to Robinson, the medical records show that he displayed abrasions and swelling the day after the arrest. Robinson states that he requested medical care and Lipps' bodycam footage shows that Robinson stated that he had pain in his knee and leg. The parties do not dispute that Robinson did not receive medical attention while in custody.

Defendants, however, cite *Garrison v. City of Berwick* and *Abbott v. Town of Livingston* to support dismissal of this claim. Both cases are readily distinguishable. In *Garrison*, the court held that the officers did not have a duty to protect the plaintiff from being struck by another, unrestrained arrestee after she had kicked, cursed, and spat at him while they were being transported to the jail. 417 So.2d 48, 50 (La. Ct. App. 1982). Robinson, by contrast, alleges that he was injured by the arresting officer and was not provided medical attention despite requesting it. In *Abbott v. Town of Livingston*, the plaintiff argued that the officer breached his duty to provide medical care by bringing the plaintiff to jail without either rendering treatment or arranging for a medical facility to provide treatment. No. 16-00188-BAJ-EWD, 2018 WL 3430690, at *7 (M.D. La. July 16, 2018). There, the court held it was not unreasonable for the officer to bring the plaintiff to the jail where the officer knew the plaintiff "would receive immediate medical attention," and the plaintiff was in fact triaged by a medical professional at the jail. *Id*. Neither court held that an arresting officer's conclusion that an injury is minor releases him or her from the duty to provide medical care when conditions require it. Unlike the cited cases, Robinson alleges that he received no medical attention despite requesting it and does not argue that the duty was breached by failure to bring him to a hospital. [ECF No. 11 at 5] Finally, the Defendants do not dispute the allegation that Robinson received no medical attention of any kind while in custody, unlike the plaintiff in *Abbott*.

In sum, there are genuine issues of material fact as to the elements of Robinson's claim. Defendants' motion is DENIED as to Robinson's claim that Defendants failed to provide medical care.[4]

---

[4] This claim alleges injuries as a result of Robinson not receiving medical care. In order to prove his claim, Robinson will have to establish by a preponderance of the evidence that Defendants' "substandard conduct was a cause in fact of [Robinson's] injuries" and "a legal cause of [Robinson's] injuries." *Audler*, 519 F.3d at 249. It is not clear, given

### D.   Vicarious Liability by LCG.

Defendants argue that Lipps has no liability for use of excessive force, either because such a claim is barred or because Lipps only used reasonable and necessary force, and therefore LCG can have no vicarious liability for Lipps' negligence. [ECF No. 49-1 at 35-36] Robinson argues that Lipps is liable to Robinson for negligence under a duty-risk analysis, and because the negligent actions were performed during the course of his employment by LCG, LCG is vicariously liable. [ECF No. 51 at 22-24]

While the Court has found that Robinson's excessive force claim is not cognizable at present, Defendants have not addressed, nor has the Court dismissed, all claims for which LCG might be vicariously liable. Consequently, the Court will not at this time dismiss his claim against LCG for vicarious liability. The motion is DENIED as to that claim.

### E.   Bystander Damages and Loss of Consortium.

Defendants seek dismissal of Robinson's claims on behalf of his minor children of bystander damages and loss of consortium on the grounds that these claims are derivative of Robinson's claims, and all of Robinson's claims fail. [ECF No. 49-1 at 37-38] Robinson argues that his children are entitled to bystander and loss of consortium damages under Louisiana Civil Code article 2315 and 2315.6. [ECF No. 51 at 24-26]

As with vicarious liability, the Court has not dismissed all of Robinson's claims that might support derivative claims on behalf of his minor children. Consequently, the Court will not dismiss those derivative claims for bystander or loss of consortium damages at present. The motion is DENIED as to those claims.

---

the short duration of Robinson's detention, that he will be able to establish that a lack of medical care caused additional damage or injury. Nevertheless, this question cannot be answered as a matter of law based on the summary judgment record.

## III.

### CONCLUSION

Considering the foregoing,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [ECF No. 49] is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Robinson's claims for excessive force under the Fourth Amendment and state law, retaliatory arrest under the First Amendment, assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress, which are DIMISSED WITH PREJUDICE to being asserted again until the *Heck* conditions are met.[5] The motion is DENIED to the extent it seeks dismissal of Robinson's claims for failure to provide medical care, vicarious liability, bystander damages, and loss of consortium. The motion is DENIED AS MOOT to the extent it seeks dismissal of Robinson's Fourth Amendment excessive force claim on the grounds of qualified immunity.

THUS DONE AND SIGNED in Chambers this 5th day of March, 2021.

_____
**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**

---

[5] *Cook v. City of Tyler, Texas*, 974 F.3d 537, 539 (5th Cir. 2020).